RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0144p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

JEFFREY L. GIBSON,

*Petitioner,*

        No. 08-3377

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

On Petition for Review of an Order of the
Securities and Exchange Commission.
No. 3-12323.

Submitted: January 23, 2009

Decided and Filed: March 11, 2009[*]

Before: GUY, CLAY, and COOK, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Timothy R. Simonds, PRESLEY & SIMONDS, Chattanooga, Tennessee, for
Petitioner. Allan Armistead Capute, SECURITIES AND EXCHANGE COMMISSION,
Washington, D.C., for Respondent.

———————————

## OPINION

———————————

CLAY, Circuit Judge. Jeffrey L. Gibson seeks review of the February 4, 2008 order
of the Securities and Exchange Commission, which affirmed the administrative law judge's
issuance of a lifetime bar precluding Gibson from associating with any broker or dealer
pursuant to § 15(b) of the Securities Exchange Act of 1934 and from associating with any

---

[*] This decision was originally issued as an "unpublished decision" filed on March 11, 2009. The
court has now designated the opinion as one recommended for full-text publication.

investment adviser pursuant to § 203(f) of the Investment Advisers Act of 1940. For the reasons that follow, we **DENY** Gibson's petition for review.

## BACKGROUND

### A.     Procedural History

On August 5, 2005, the Securities and Exchange Commission Division of Enforcement ("the Division") filed a civil action against Jeffrey L. Gibson and Investment Property Management, LLC ("IPM"), in the United States District Court for the Northern District of Georgia, alleging that Gibson misappropriated approximately $450,000 of investor funds generated from the sale of limited partnership interests in American Car Wash Fund, LP.

On February 9, 2006, Gibson signed a consent agreement, in which he agreed to the entry of a final judgment holding Gibson and IPM jointly and severally liable for the disgorgement of $427,701.73 in investor funds. It was agreed that the judgment would impose a civil penalty of $25,000 pursuant to § 20(d) of the Securities Act of 1933 ("Securities Act") and § 21(d)(3) of the Securities Exchange Act of 1934 ("Exchange Act"), and that it would permanently enjoin Gibson from violating § 17(a) of the Securities Act, 14 U.S.C. 77q(a) (fraud in the offer or sale of securities); § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) (manipulative and deceptive devices); Exchange Act Rule 10b-5, 17 C.F.R. 240.10b-5 (fraud in connection with the purchase or sale of securities); and § 206 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-6 (fraud by an investment adviser). The district court entered final judgment against Gibson in accordance with the terms set forth in the consent agreement.

On June 5, 2006, the Division filed an order instituting a follow-on administrative proceeding before the Securities and Exchange Commission, seeking remedial sanctions against Gibson pursuant to pursuant to § 15(b) of the Exchange Act and § 203(f) of the Advisers Act.[1] After two pre-hearing conferences, the Division filed a motion for

---

[1]This type of administrative proceeding, in which the Division seeks to impose sanctions after an individual is enjoined from acts involving securities or investment fraud in federal court, is commonly called a "follow-on" proceeding. Exchange Act §§ 15(b)(6) and 15(b)(c)(4) and Advisers Act §§ 203(f) and 203(e)(4) authorize the Securities and Exchange Commission to sanction any person associated with a broker, dealer, or investment adviser who has been enjoined from "engaging in or continuing any conduct

summary disposition, and on September 22, 2006, an administrative law judge ("ALJ") granted the Division's motion, imposing a lifetime bar precluding Gibson from associating with any broker, dealer, or investment adviser. Gibson appealed that decision to a panel of the Securities and Exchange Commission ("the Commission"), and the Commission affirmed the ALJ's decision on February 4, 2008.[2]  Gibson filed a timely notice of appeal, seeking this Court's review of the Commission's judgment.

## B.       Substantive Facts

In the consent agreement signed by Gibson in the underlying federal court proceedings,  Gibson acknowledged that "the Court's entry of a permanent injunction may have collateral consequences" and agreed that "[i]n any disciplinary proceeding before the Commission based on the entry of the injunction in this action, [he] shall not be permitted to contest the factual allegations of the Complaint [filed in district court] in this action."  (Joint Appendix ("J.A.") at 58.)  As a result, we will take the facts alleged in the aforementioned district court complaint ("the Complaint") as true for purposes of our review.

The Complaint alleged that Gibson, a resident of Tennessee, was a certified financial planner, a registered representative of a broker-dealer, and part owner of IPM, a limited liability company.  In November 2002, Gibson formed American Car Wash Fund, LP ("ACW") to buy and manage coin-operated car-wash operations in northern Georgia.  Through IPM, Gibson sold 43 limited-partnership interests in ACW, raising approximately $875,000.  Approximately 38 of the limited partners were also clients of Gibson's advisory business.

---

or practice in connection with the purchase or sale of any security."  15 U.S.C. §§ 78o(b) and 80b-3.

[2]The procedural background of this case is somewhat complicated, so we will reiterate and summarize the relevant proceedings and terminology. The Securities and Exchange Commission Division of Enforcement ("the Division") filed and prosecuted a civil suit in United States District Court.  After receiving a favorable judgment, the Division filed and prosecuted a follow-on administrative proceeding seeking remedial sanctions in front of an Administrative Law Judge ("ALJ") of the Securities and Exchange Commission.  The ALJ imposed sanctions, and that decision was appealed to a panel of the Securities and Exchange Commission ("the Commission").  It is the Commission's judgment that is now being considered by this Court.  For purposes of clarity, we will use the term "Division" when referring to the Securities and Exchange Commission in its prosecutorial role and the term "Commission" when referring to the appellate review panel of the Securities and Exchange Commission.

Gibson provided a private placement memorandum ("PPM") to prospective investors which stated that after organizational expenses were satisfied, investors' funds would be invested in money market funds or government securities until the funds could be invested in projects. According to the Complaint, however, almost as soon as Gibson began selling interests in ACW, he began misappropriating investor funds for his own use. Gibson wrote checks payable to cash on ACW bank accounts, misappropriating approximately $450,000. The Complaint stated that Gibson's actions were contrary to representations made by Gibson and exceeded any payments to which Gibson and IPM may have been entitled under the PPM. The PPM was never amended to reflect the actual use of the funds.

The Complaint alleged that the misappropriations continued up to the time the Complaint was filed. The Complaint also alleged that subsequent to selling the partnership interests in ACW, Gibson and IPM sought to "lull investors into believing that their investments [were] profitable and to conceal the misappropriation of funds" by sending letters to the investors describing "annualized rates of return, dividends and purchases of various properties," without disclosing "the ongoing misuse of proceeds by" Gibson and IPM.  (J.A. at 43.)

After Gibson executed a consent agreement, the district court permanently enjoined Gibson from violating the antifraud provisions of the securities laws, ordered him to pay a civil penalty of $25,000 and to disgorge $427,701.73 in misappropriated funds, and enjoined Gibson and IPM from serving as a general partner or otherwise controlling ACW.  Gibson subsequently liquidated assets purchased with the misappropriated investors' funds and used the proceeds to pay the court-ordered civil penalty and disgorgement.

On June 6, 2006, the Division initiated a follow-on administrative proceeding before the Securities and Exchange Commission pursuant to Exchange Act § 15(b) and Advisers Act § 203(f). After two pre-hearing conferences, the Division moved for summary disposition pursuant to Commission Rule of Practice 250, relying on the allegations of the aforementioned district court Complaint.  Gibson filed a response,

attaching his own declaration and declarations from 31 ACW investors. Gibson's declaration stated that he had a clean disciplinary record, that he cooperated with the Commission's investigation, and that he paid the fine and disgorgement ordered by the district court. In each individual investor declaration, the investor indicated that he or she had reviewed Gibson's answer to the Complaint, agreed to "approve and ratify" all of Gibson's actions with respect to ACW, and wanted Gibson to continue to act on his or her behalf as investment adviser.  (J.A. at 162.)  These declarations appear to be identical, having been made on preprinted forms that allow only for the investors' initials and signatures.

The ALJ granted the Division's motion for summary disposition, finding that Gibson had failed to create a genuine dispute of material fact. After concluding that Gibson's misappropriation of investor funds demonstrated a lack of honesty and judgment which made him unsuited to function in the securities industry, the ALJ held that the public interest required that Gibson be barred.

Gibson appealed the ALJ's decision to a panel of the Securities and Exchange Commission.  After discussing the uncontested factual allegations in the Complaint (which were in turn, taken as true by the ALJ and the Commission) and the relevant statutory provisions, the Commission concluded that there were significant doubts about Gibson's fitness to remain in the securities industry.  The Commission held that the ALJ correctly concluded that there was no issue with regard to any material fact and that imposing a lifetime bar against Gibson would serve the public interest.  The Commission therefore affirmed the ALJ's issuance of a lifetime bar precluding Gibson from associating with any securities broker, dealer, or investment adviser pursuant to § 15(b) of the Exchange Act and § 203(f) of the Advisers Act.  Gibson now seeks our review of the Commission's order.

**DISCUSSION**

I.       **Grant of Summary Disposition**

        A.       **Standard of Review**

Our review of an order of the Commission is governed by the Administrative Procedure Act, 5 U.S.C. § 701, et seq.  *See MFS Sec. Corp. v. SEC*, 380 F.3d 611, 617 (2d Cir. 2004).  This Court must affirm if the Commission's findings of facts are supported by substantial evidence.  *Id.*  We uphold the Commission's legal conclusions unless they are "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'"  *Id.* (quoting 5 U.S.C. § 706(2)(A)); *see also Seghers v. SEC*, 548 F.3d 129, 132 (D.C. Cir. 2008).

        B.       **Analysis**

Gibson first argues that the Commission committed reversible error by affirming summary disposition in the case against him without first holding an evidentiary hearing.

SEC Rule 201.250 of the Commission's Rules of Practice ("Rule 250") provides that a hearing officer is entitled to "grant the motion for summary disposition if there is no genuine issue with regard to any material fact and the party making the motion is entitled to a summary disposition as a matter of law."  17 C.F.R. § 201.250 (2009).

Gibson argues that summary disposition of disciplinary cases is normally not appropriate under Rule 250, and that it was not appropriate here, because there was a genuine issue with regard to facts that mitigate his misconduct.  He cites to the commentary to Rule 250, which provides as follows:

> Motions for disposition prior to hearing may provide particular benefits in regulatory proceedings. Enforcement or disciplinary proceedings in which a motion for disposition prior to hearing would be appropriate are likely to be less common. Typically, enforcement and disciplinary proceedings that reach litigation involve genuine disagreement between the parties as to the material facts. Where a genuine issue as to material facts clearly exists as to an issue, it would be inappropriate for a party to seek leave to file a motion for summary disposition or for a hearing

officer to grant the motion. While partial disposition may be appropriate in some cases, a hearing will still often be necessary in order to determine a respondent's state of mind and the need for remedial sanctions if liability is found.

17 C.F.R. § 201.250 (2009)*; accord In re Melvin Mullin*, 61 SEC Docket 2517, 1996 WL 281717 (May 17, 1996).

Gibson's position is unconvincing for several reasons. First, the Commission has held, contrary to Gibson's assertions, that summary disposition is not disfavored in follow-on disciplinary proceedings. *See In re Conrad P. Seghers*, 91 SEC Docket 1945, 2007 WL 2790633 (Sept. 26, 2007) (explaining that when a respondent seeks to mitigate his or her misconduct in a follow-on proceeding involving fraud, summary disposition would be inappropriate only in "rare circumstances"). As the Division properly notes, this Court has affirmed permanent injunctions entered on summary judgment. *See, e.g., SEC v. George*, 426 F.3d 786, 790-91 (6th Cir. 2005); *SEC v. Waco Financial Inc.*, 751 F.2d 831, 833-34 (6th Cir. 1985).

Second, as discussed above, Gibson agreed not to dispute the facts alleged in the original district court Complaint. The Complaint alleged that Gibson misappropriated investor funds of approximately $450,000, that he misrepresented his actions to investors, and that his conduct was repeated and ongoing. When the facts underlying Gibson's relevant misconduct are undisputed, it stands to reason that there is no genuine issue of fact.

Third, Exchange Act §§ 15(b)(6) and 15(b)(c)(4) and Advisers Act §§ 203(f) and 203(e)(4) authorize the Commission to sanction any person associated with a broker, dealer, or investment adviser who has been enjoined from "engaging in or continuing any conduct or practice in connection with the purchase or sale of any security." 15 U.S.C. §§ 78o(b) and 80b-3. Gibson does not dispute that he was associated with a broker-dealer and an investment adviser, and that the district court enjoined him from engaging in relevant conduct. Consequently, the Commission properly determined that the statutory requirements for the imposition of sanctions were satisfied.

The only evidence that Gibson submitted on his behalf is evidence that he claims mitigates his misconduct. As discussed above, in Gibson's opposition to the motion for summary disposition, which he filed before the ALJ, Gibson provided his own declaration and declarations from 31 ACW investors. Gibson's declaration attested to his prior clean disciplinary record, his cooperation with the Division's investigation, and his prompt payment of the civil penalty and disgorgement. These attestations were not disputed by the Division, and both the ALJ and the Commission took them as true for purposes of these proceedings. It was not arbitrary or capricious for the Commission to find that they did not create a genuine issue of fact as to whether disciplinary action was warranted. *See SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975) (stating that cessation of illegal activity or disclaimer of an intent to violate the law in the future are not sufficient to justify the denial of an injunction); *SEC v. Bilzerian*, 29 F.3d 689, 695 (D.C. Cir. 1994) (holding that an evidentiary hearing was not required to issue a permanent injunction despite a party's assurances that he would not violate securities laws in the future).

With respect to the investor declarations submitted by Gibson, each individual declaration stated that the investor had reviewed Gibson's answer to the complaint, that the investor ratified Gibson's actions, and that the investor wanted Gibson to continue to serve as his or her investment adviser. Again, the ALJ and the Commission took these declarations as true and found a bar appropriate notwithstanding the evidence. We agree with the Commission's observation that "it is difficult to see how live testimony regarding the investors' attitude toward Gibson would affect the sanctioning determination." (J.A. at 245.)

Because the investor declarations, like Gibson's own declaration, do not create a material issue of fact, and because Gibson proffered no additional evidence that he hoped to prove at a hearing, we hold that the Commission did not err in granting the Division's motion for summary disposition without requiring a full evidentiary hearing.

**II.    Remedial Sanctions**

**A.    Standard of Review**

"Unless a gross abuse of discretion on the part of the Commission is shown, the Commission's determination of the sanctions necessary to protect the public interest will not be disturbed." *Armstrong, Jones & Co. v. SEC*, 421 F.2d 359, 365 (6th Cir. 1970); *see also Lowry v. SEC*, 340 F.3d 501 (8th Cir. 2003) (applying "gross abuse of discretion" standard when reviewing SEC sanctions); *Orkin v. SEC*, 31 F.3d 1056, 1066 (11th Cir. 1994) (same).  This standard recognizes that there is a "range of choice within which we will not reverse . . . even if we might have reached a different decision." *Siebert v. Allen*, 506 F.3d 1047, 1049 n.2 (11th Cir. 2009) (quotation marks and citations omitted).

The Fifth Circuit's decision in *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979), is recognized as the leading case that establishes the standard courts should use when evaluating administrative actions involving disciplinary sanctions.  *See, e.g., Seghers*, 548 F.3d at 134; *Lowry* 340 F.3d at 504.  Under *Steadman*, a court must consider a number of factors when imposing disciplinary sanctions: (1) the egregiousness of the defendant's actions, (2) the isolated or recurrent nature of the infraction, (3) the degree of scienter involved, (4) the sincerity of the defendant's assurances against future violations, (5) the defendant's recognition of the wrongful nature of his conduct, and (6) the likelihood that the defendant's occupation will present opportunities for future violations.  603 F.2d at 1140.

**B.    Analysis**

Gibson argues that, applying the *Steadman* factors to this case and considering the substantial mitigating evidence favoring Gibson, a lifetime bar is an excessive disciplinary sanction that should be reversed.

We find that the Commission appropriately considered each of the *Steadman* factors, as well as the mitigating evidence submitted by Gibson, before affirming the ALJ's imposition of remedial sanctions.  First, the Commission found that Gibson's

conduct was egregious, because he misappropriated approximately $450,000 from a group of investors, many of whom were clients to whom he owed a fiduciary duty, all the while sending the investors "lulling communications." The Commission next found that the infractions were recurrent and ongoing and that they involved several different types of misconduct and a large number of clients. Third, the Commission found that Gibson's actions demonstrated a high degree of scienter, that he took actions to disguise his conduct, and that he failed to discontinue the conduct until the Division filed a complaint in district court. As to the fourth and fifth factors, the Commission stated that "[w]hile we do not dispute Gibson's assertions regarding his acknowledgment of wrongdoing and his assurances against future misconduct, those assertions do not overcome the other factors that indicate the gravity of the threat to investors that Gibson would present if he were permitted to remain in the securities industry." (J.A. at 241.) Finally, the Commission found that if Gibson were not barred, he would be presented with further opportunities to engage in misconduct, and that his breach of fiduciary duty as an investment adviser demonstrated a lack of fitness to remain in the industry.

The Commission has held that "the fact that a person has been enjoined from violating antifraud provisions 'has especially serious implications for the public interest.'" *In re Michael T. Struder*, Exchange Act Rel. No. 50411, 83 SEC Docket 2853, 2861 (Sept. 20, 2004); *see also In re Marshall E. Melton*, Advisers Act Rel. No. 2151, 56 SEC Docket 695, 713 (July 25, 2003) ("Based on our experience enforcing federal securities laws, we believe that ordinarily, and in absence of evidence to the contrary, it will be in the public interest to . . . suspend or bar from participation in the securities industry . . . a respondent who is enjoined from violating the antifraud provisions.")

In light of this precedent and the Commission's analysis of the *Steadman* factors, we conclude that the Commission did not grossly abuse its discretion in determining that Gibson's lifetime bar was necessary to serve the public interest.

## CONCLUSION

For the reasons stated above, we **DENY** Gibson's petition for review.